IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ALLENBERG COTTON CO.                                            PLAINTIFF

V.                                              CIVIL ACTION NO. 4:07-CV-123-SA-DAS

STAPLE COTTON COOPERATIVE
ASSOCIATION                                                    DEFENDANT


## MEMORANDUM OPINION

Before the court is the Defendant's Motion to Dismiss [55]. For the reasons stated below,

the court treats the Defendant's Motion to Dismiss as if it were a motion for summary judgment, and

summary judgment in favor of the Defendant is granted.

### I. Factual and Procedural Background

In October of 2005, Allenberg Cotton Co. (Allenberg) purchased cotton that had been ginned

by Mid-Delta Cotton Growers, Inc. (Mid-Delta). Allenberg asserts that during the ginning process,

the cotton was contaminated by hydraulic fluid. Mid-Delta delivered the cotton to Staple Cotton

Cooperative Association (Staple Cotton), a federally licensed cotton warehouse, for storage. Upon

receipt of the cotton in question, Staple Cotton issued electronic warehouse receipts, which were

then electronically delivered to purchasers, transferring ownership of the cotton in question.

On November 10, 2005, Allenberg received a shipment of the cotton from Staple Cotton's

warehouse and noticed that a visible contaminant - hydraulic fluid - had discolored the cotton and

caused distortions in the plastic covering over the cotton. Staple Cotton had not advised Allenberg

of the hydraulic fluid contaminant, and the cotton had been in Staple Cotton's warehouse between

the time that the negotiable electronic warehouse receipts were created and the time that the cotton

was shipped.

Allenberg alleges that the negotiable warehouse receipts issued by Staple Cotton for the cotton did not disclose any defect in the cotton, despite the fact that the contaminant was clearly visible. Further, Allenberg alleges that the warehouse receipts did not include any disclaimer or other claim that Staple Cotton lacked knowledge of the condition of the cotton. Allenberg claims that it relied on the warehouse receipts issued by Staple Cotton, that Staple Cotton knew or should have known that the cotton in question had been contaminated, that Staple Cotton had a duty to inspect the cotton prior to issuing warehouse receipts, and that Staple Cotton's failure to do so has damaged them because the contaminated cotton has a diminished market value.

## II. Summary Judgment Standard

If "matters outside the pleadings are presented to and not excluded by the court," a motion presented to the court as a motion to dismiss under Rule 12(b)(6) "shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(d). Although the Defendant styled its motion as a motion to dismiss under Rule 12(b)(6), it depended on matters outside the pleadings in its motion. Likewise, the Plaintiff, in its response, relied on matters outside the pleadings. Because the court considered these documents, it will evaluate the Defendant's motion under the summary judgment standard of Rule 56.

Upon consideration of a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'... that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.' " Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (citing FED. R. CIV. P. 56(c), (e)).  The burden is not discharged by "mere allegations or

denials."  FED. R. CIV. P. 56(e).  "An issue of material fact is genuine if a reasonable jury could

return a verdict for the nonmovant."  Agnew v. Wash. Mut. Fin. Group, LLC, 244 F. Supp. 2d 672,

675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505,

91 L. Ed. 2d 202 (1986)).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322, 106 S. Ct.

2548, 91 L. Ed. 2d 265; FED. R. CIV. P. 56(c); see also Matsushita Elec. Indus. v. Zenith Radio

Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The court is not to weigh the

evidence or engage in credibility determinations.  Anderson, 477 U.S. at 249, 106 S. Ct. 2505, 91

L. Ed. 2d 202; Deville v. Marcantel, 2009 U.S. App. LEXIS 9403, *10 (5th Cir. May 1, 2009).

"[T]he court must view the facts in the light most favorable to the non-moving party and draw all

reasonable inferences in its favor."  Deville, 2009 U.S. App. LEXIS 9403 at *10.

### III. Discussion

In its complaint, Allenberg brought state law claims of negligent misrepresentation and

breach of statutory duties against Staple Cotton.  Allenberg also brought federal causes of action

under the United States Warehouse Act (USWA)[1], alleging violations of 7 U.S.C. §§ 249, 250, and

---

[1] 7 U.S.C. §§ 241-256 (2009).  For a thorough summary of the USWA, see 10-74
Agricultural Law §§ 74.02, 74.03 (2009).

251.[2]

Staple Cotton argues that Allenberg's causes of action premised on state law are preempted by the USWA. Staple Cotton also argues that Allenberg may not recover under any of the federal provisions cited in the complaint because none of them impose a duty on warehousemen to inspect cotton or warrant its quality before issuing warehouse receipts.

## A.    State Causes of Action

Federal law preempts state law when:

(1) Congress explicitly "define[s] the extent to which it intends to pre-empt state law"; (2) Congress indicates "an intent to occupy an entire field of regulation"; or (3) state law conflicts with federal law such that either (a) there is an actual conflict and compliance with both laws is impossible, or (b) state law is an obstacle to the "full purposes and objectives of Congress."

Campo v. Allstate Ins. Co., 562 F.3d 751, 2009 U.S. App. LEXIS 5460, *14 (5th Cir. Mar. 17, 2009) (quoting Mich. Canners & Freezers Ass'n, Inc. v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 469, 104 S. Ct. 2518, 81 L. Ed. 2d 399 (1984)).

The United States Supreme Court has specifically addressed the issue of whether the USWA preempts state regulations of warehousemen. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947). In Rice, the plaintiff accused a warehouseman of charging excessive storage rates and discriminating in its storage rates - both in violation of Illinois law. Id., 331 U.S. at 220-21. The defendants argued that the USWA superseded Illinois's authority to regulate on the matter. Id., 331 U.S. at 222, 67 S. Ct. 1146.

---

[2]In its complaint, the Plaintiff alleges violations of 7 U.S.C. §§ 259, 260, and 262. However, the USWA was amended in November of 2000, and Sections 257-273 were omitted. The sections of the amended USWA that correspond to those cited by the Plaintiff in its complaint are 7 U.S.C. §§ 249, 250, and 251.

The Court explained that the USWA, as it was originally enacted in 1916, "made federal regulation in [the] field subservient to state regulation." Id., 331 U.S. at 223, 67 S. Ct. 1146. However, in 1931 Congress amended the USWA to make the "power, jurisdiction, and authority" conferred upon the Secretary of Agriculture by the Act "exclusive with respect to all persons securing a license" under the Act, as long as the license was in effect. Id. at 229, 67 S. Ct. 1146.[3]

The Court noted that warehouses storing grain for interstate commerce were in the federal domain. Id. at 229-30, 67 S. Ct. 1146. Therefore, if Congress so chooses, it may "take unto itself all regulatory authority over them." Id. at 230, 67 S. Ct. 1146. The Court concluded that Congress chose to do so with respect to the USWA, given its legislative history. Id. at 232-33, 67 S. Ct. 1146. The Court noted that Congress, when amending the USWA in 1931, not only removed language indicating its subservience to state law, but also added language granting exclusive "power, jurisdiction, and authority" to the Secretary of Agriculture. Id. The Court concluded that warehousemen licensed under the USWA "can do business without regard to State acts; that the matters regulated by the Federal Act cannot be regulated by the States; that on those matters a federal licensee (so far as his interstate or foreign commerce activities are concerned) is subject to regulation by one agency and one agency alone." Id. at 234, 67 S. Ct. 1146. In the end, the Court held that each of the specific matters raised in the plaintiff's complaint had been preempted by Congress. Id. at 235, 67 S. Ct. 1146.

---

[3]The current version of the USWA states, "The Secretary [of Agriculture] shall have exclusive power, jurisdiction, and authority, to the extent that this Act applies, with respect to... each warehouse operator licensed under this Act." 7 U.S.C. § 242(a). The Act further states that the Secretary is authorized to prescribe the duties and responsibilities of federally licensed warehousemen with respect to the agricultural products stored or handled by the warehouseman. 7 U.S.C. § 242(g).

The Court also established a test for determining whether the matter upon which a state

asserts the right to act (or, in the present case, upon which a plaintiff asserts the state's right to act)

has been preempted by the USWA.  If the matter "is in any way regulated by the Federal Act," the

"federal scheme prevails though it is a more modest, less pervasive regulatory plan than that of the

State."  Id. at 236, 67 S. Ct. 1146; see also Greater Baton Rouge Port Comm'n v. United States, 287

F.2d 86, 91 (5th Cir. 1961) (acknowledging Congress's intent to preempt state regulation of

warehouses and the test established by Rice to determine whether the particular state regulation is

preempted).  If Congress "has not adopted a policy of its own" with respect to the matter, the state

law is not preempted.  Id. at 237, 67 S. Ct. 1146.  Two state laws are at issue in this case: 1) a

Tennessee statute regulating the contents of warehouse receipts; and 2) a tort claim of

misrepresentation.

First, the Plaintiff alleges Defendant breached its statutory duties as a warehouseman under

Tennessee law.  The law in question reads:

(a)     A warehouse receipt need not be in any particular form.

(b)     Unless a warehouse receipt provides for each of the following, the warehouse
        is liable for damages caused to a person injured by its omission:

        (1)     A statement of the location of the warehouse facility where the goods
                are stored;
        (2)     The date of issue of the receipt;
        (3)     The unique identification code of the receipt;
        (4)     A statement whether the goods received will be delivered to the
                bearer, to a named person, or to a named person or its order;
        (5)     The rate of storage and handling charges, unless goods are stored
                under a field warehousing arrangement, in which case a statement of
                that fact is sufficient on a nonnegotiable receipt;
        (6)     A description of the goods or the packages containing them;
        (7)     The signature of the warehouse or its agent;
        (8)     If the receipt is issued for goods that the warehouse owns, either
                solely, jointly, or in common with others, a statement of fact of that

ownership; and

(9) A statement of the amount of advances made and of liabilities incurred for which the warehouse claims a lien or security interest, unless the precise amount of advances made or liabilities incurred, at the time of the issue of the receipt, is unknown to the warehouse or to its agent that issued the receipt, in which case a statement of the fact that advances have been made or liabilities incurred and the purpose of the advances or liabilities is sufficient.

(c) A warehouse may insert in its receipt any terms that are not contrary to chapters 1-9 of this title and do not impair its obligation of delivery under § 47-7-403 or its duty of care under § 47-7-204. Any contrary provision is ineffective.

Tenn. Code Ann. § 47-7-202 (2009).

The section of the USWA addressing the contents of warehouse receipts states that each receipt issued by a warehouseman licensed under the USWA "shall contain such information... as the Secretary may require by regulation." 7 U.S.C. § 250(c). The regulations state that the warehouse receipts must be in a format that, "besides complying with the requirements of the Act, must be in a format as prescribed in the applicable licensing or provider agreement and authorized by DACO."[4] 7 C.F.R. § 735.300.

Even if the federal law is "a more modest, less pervasive regulatory plan than that of the State[,]" it preempts the state regulation if the "matter is in any way regulated by the Federal act." Rice, 331 U.S. at 236, 67 S. Ct. 1146. Since the USWA regulates the contents of warehouse receipts, Congress has preempted the field in that area. Tennessee Code Section 47-7-202 is preempted because it attempts to regulate the contents of warehouse receipts.

---

[4]DACO is an acronym for the Farm Service Agency's Deputy Administrator, Commodity Operations. 7 C.F.R. § 735.2(a) (2009).

The Plaintiff also brought a state law cause of action of negligent misrepresentation.[5]   The

Plaintiff made clear in its response brief that the negligent misrepresentation claim was based on the

fact that Staple Cotton knew or should have known about the contamination of the cotton, and that

it misrepresented the true condition of the cotton by issuing warehouse receipts that failed to

disclose the contamination.  Essentially, the Plaintiff argues that the Defendant is civilly liable under

state law for issuing warehouse receipts that fail to accurately reflect the quality or condition of the

cotton.  This charge is effectively the same as the Plaintiff's cause of action under Tennessee's

warehouse receipt law, which imposes civil liability for damages caused to a person by omission of

certain information from warehouse receipts.  Either cause of action is an attempt by the state to

regulate the content of warehouse receipts, and Congress has preempted the field of regulation on

that matter, with respect to federally licensed warehouses.  See 7 U.S.C. § 250(c); Rice, 331 U.S.

at 236, 67 S. Ct. 1146.

Furthermore, the USWA also states that "the Secretary [of Agriculture] may prescribe the

duties of a warehouse operator operating a warehouse licensed under this Act with respect to the

warehouse operator's care of and responsibility for agricultural products stored or handled by the

warehouse operator."  7 U.S.C. § 242(g).  The Plaintiff alleges that the Defendant had a duty under

state law to know about the contamination of the cotton and to relate that contamination to the

Plaintiff by way of the warehouse receipts.  The USWA clearly regulates the standard of care

expected of warehousemen in the operation of a warehouse, just as it clearly regulates the contents

---

[5]The Plaintiff is apparently unsure as to whether Tennessee or Mississippi tort law
applies and failed to include a choice of law analysis in its brief.  However, the issue of which
state's law applies is immaterial to the analysis of whether the state tort claim is preempted by
federal law.

of warehouse receipts. The very fact that the USWA addresses the matter is sufficient to preempt

any state regulation of it. See Rice, 331 U.S. at 236, 67 S. Ct. 1146 ("The test, therefore, is whether

the matter on which the state asserts the right to act is in any way regulated by the Federal Act. If

it is, the federal scheme prevails though it is a more modest, less pervasive regulatory plan than that

of the State."). Therefore, because the USWA addresses the issue of the standard of care required

of warehousemen in the operation of federally licensed warehouses, state regulation of the matter

is preempted.

Since the Defendant is entitled to judgment as a matter of law, the court grants the

Defendant's motion for summary judgment with respect to  the Plaintiff's state law claims.

## B.      *Federal Causes of Action*

The Plaintiff alleges that the Defendant has violated three sections of the USWA.[6] Private

causes of action for violations of the USWA are permitted by the regulations promulgated by the

Secretary of Agriculture, in whom Congress placed exclusive power, jurisdiction, and authority with

respect to warehousemen licensed under the USWA. 7 U.S.C. § 242(a); 7 C.F.R. § 735.9(a) ("A

person may initiate legal action in any court of competent jurisdiction concerning a claim for

noncompliance or an unresolved dispute with respect to activities authorized under the Act.").

First, the Plaintiff alleges that the Defendant violated 7 U.S.C. Section 249, which permits

a warehouseman to transfer agricultural products from one warehouse to another for continued

storage and requires that, after transfer, the warehouseman produce products of the same kind,

---

[6]The court notes that the Plaintiff's complaint alleged violations of 7 U.S.C. Sections
250, 251, and 249; and 7 C.F.R. Section 735.300. However, the Plaintiff's response brief does
not address 7 U.S.C. Section 249. The court will assume, though, that the Plaintiff has not
abandoned the allegations concerning Section 249.

quality and grade as evidenced on the receipt. 7 U.S.C. § 249. However, the facts alleged by the

Plaintiff in its complaint do not indicate that this is a situation involving a warehouseman's transfer

of cotton from one warehouse to another for continued storage. The complaint alleges that the

cotton was delivered by Mid-Delta to the Defendant's warehouse, and that it was then shipped to

the Plaintiff. Therefore, Section 249 is inapplicable to the issues presented by the case sub judice.

The Plaintiff also alleges that the Defendant violated 7 U.S.C. Section 251. That section

requires that warehousemen "deliver the agricultural product stored or handled in the warehouse on

a demand made by . . . the holder of the receipt for the agricultural product." 7 U.S.C. § 251(a).

However, Section 251 does not mention the condition or quality of the agricultural product delivered

by warehousemen, and it imposes no duties to inspect the product or warrant its quality. It only

requires that warehousemen promptly deliver the product upon presentation of a receipt. 7 U.S.C.

§ 251(a), (c). The Plaintiff does not dispute that the Defendant delivered the product. Therefore,

the Defendant has not violated Section 251.

Finally, Plaintiff alleges that Defendant violated 7 U.S.C. Section 250. Section 250 of the

USWA states that "the warehouse operator shall issue a receipt to the depositor as prescribed by the

Secretary." 7 U.S.C. § 250(a). The warehouseman issues a receipt at the request of the depositor,

and the warehouseman may not issue a receipt until the quality, condition, and weight of the

agricultural product have been ascertained by a licensed inspector and weigher. 7 C.F.R. §

735.300(b)(1), (3). "Each receipt issued... shall contain such information... as the Secretary may

require by regulation." 7 U.S.C. § 250(c). When issuing a receipt and purposefully omitting any

information, the warehouseman must "notate the blank" to show such intent. 7 C.F.R. §

735.300(b)(6). Upon presentation of a receipt, the warehouseman must deliver an agricultural

product of the same identity, quality, grade and condition as that described on the receipt. 7 C.F.R. § 735.300(b)(9). The statutes and regulations do not require the warehouseman to inspect the agricultural products.[7] Although requiring that quality, condition, and weight be ascertained before issuance of a receipt, the regulations do not require that quality, condition, or weight actually be recorded on the receipt. Indeed, despite referring to intentional omission of information, the regulations do not specify what information is required to be recorded on the receipts.

The Plaintiff does not argue that the receipt included inaccurate information; rather, the Plaintiff argues that the Defendant knew or should have known that the cotton was contaminated and failed to note its condition on the receipt. Even if the court were to construe the requirement that the quality, condition, and weight of the cotton be ascertained by a licensed inspector before issuance of the receipt as requiring that the results of said inspection be recorded on the receipt, the regulation itself provides that warehouseman, if intentionally omitting information, must only "notate the blank." 7 C.F.R. § 735.300(b)(6).

The warehouse receipt in the present case had the annotation "No" next to the category indicating whether it was graded at the request of the depositor. Also, the warehouse receipt clearly identified the "current holder" of the bale as Staple Cotton and identified the specific warehouse at which the bale was stored. The "warehouse profile" provided by the electronic receipt vendor - which provides additional information about the warehouseman - specifically stated in its terms and conditions that any bale stored by Staple Cotton at the warehouse in question was "not graded on request of depositor at time of receipt issuance." Therefore, the Defendant has fulfilled its statutory

_____

[7]In fact, the United States Cotton Standards Act and its supporting regulations establish a framework in which grading or other classification of cotton is performed by agents of the USDA. See 7 U.S.C. §§ 51-65; 7 C.F.R. §§ 28.1-28.961.

duties with respect to the information recorded on the warehouse receipt.  See Staple Cotton Coop.

Ass'n v. D. G. and G., Inc., 503 F. Supp. 2d 1217 (E.D. Mo. 2007) (issuance of a warehouse receipt

that does not describe the quality, condition, or weight of the cotton does not violate the USWA or

its corresponding regulations).

The USWA and its supporting regulations impose no duty upon a warehouseman to inspect

or warrant the quality of the agricultural goods stored.  Furthermore, even if the language in the

regulations requiring that a warehouseman "notate the blank" to show the intent to purposefully omit

information were to be interpreted as requiring a disclaimer, the Defendant provided sufficient

disclaimers.  Therefore, Staple Cotton has complied with all of its duties as prescribed by the USWA

and the regulations promulgated by the Secretary of Agriculture.  The court finds there is no genuine

issue of disputed fact and the Defendant is entitled to judgment as a matter of law.  Summary

judgment in favor of the Defendant as to the Plaintiff's federal claims is granted.

### IV. Conclusion

For the reasons stated above, summary judgment in favor of the Defendant is granted.  A

separate order consistent with this opinion shall issue on this the 9th day of June, 2009.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**